## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOE N. HARRELL** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:22-0730** |
| **v.** | : | **(JUDGE MANNION)** |
| **MATTHEW MAYER,** *et al.*, | : | |
| **Defendants** | : | |

## MEMORANDUM

### I. BACKGROUND

Plaintiff, Joe N. Harrell, a pretrial detainee confined at the Dauphin County Prison, Harrisburg, Pennsylvania, filed the above caption civil rights action pursuant to 42 U.S.C. §1983. (Doc. 1). The named Defendants are the Dauphin County Prison and the following Dauphin County Prison employees: Terri Ozog, Prison Counselor; Jake Kothe, Grievance and Unit Manager; Matthew Mayer, Correctional Officer; and William Kimmick, C.I.D. Detective. Id. Plaintiff states that he was "on Q61 cell at Dauphin County Prison" and he "was put in the hold[1] (sic) because Ms. Terri Ozog didn't mail [his] motion on 12-28-21." Id. He claims that he is "listed as bottom bed

---

[1] The Court interprets this as Plaintiff's reference to disciplinary confinement or the "hole."

because of stitches in [his] left and right hand so one she know that [he] know she haven't mailed [his] important motion" and she "moved [him] to top bed" and he "refused to go as [he] was on Q61 cell." Id.

Plaintiff next complains that on January 23, 2022, Officer Mayer "with force aggressively grabb[ed] and squeez[ed] [his] arm to the point that his fingernails were in [Plaintiff's] skin." Id. He claims that Mayer assaulted him even though he "wasn't refusing and got found guilty 26 days and 10 days, so all together 3 days." Id. He alleges that Defendants, the Dauphin County Prison, William Kimmick, and Jake Kothe "try to hide what's going on in the prison violating [his] constitutional rights." Id. He believes that Defendant Kothe "mak[es] the grievances go missing because he is handling the grievance." Id.

 Thus, Plaintiff filed the instant action in which he seeks compensatory and punitive damages and to have his aggravated assault dismissed and the time spent in the hole expunged. Id.

On August 22, 2022, Defendants filed a motion to dismiss, along with a brief in support. (Docs. 14, 15).

On June 22, 2023, in accordance with Paladino v. Newsome, 885 F.3d 203 (3d Cir. 2018), (holding that the District Court shall provide the parties notice that it will consider exhaustion in its role as fact finder under Small v.

- 2 -

Camden Cty., 728 F.3d 265 (3d Cir. 2013)), this Court issued an Order, converting Defendants' motion to dismiss to a motion for summary judgment and allowing the parties an opportunity to supplement the record with supporting evidence relevant to the exhaustion of administrative remedies. (Doc. 36). On July 6, 2023, Defendants filed a statement of material facts and brief in support. (Doc. 37).

Defendants' motion for summary judgment based on Plaintiff's failure to exhaust administrative remedies and Defendants' motion to dismiss the merits of Plaintiff's complaint, are ripe for disposition. For the reasons set forth below, the Court will deny Defendants' motion for summary judgment based on exhaustion. Defendants' motion to dismiss the merits of Plaintiff's complaint will be granted, in part and denied, in part.

## II. FAILURE TO EXHAUST

### A. *Standard of* Review

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Co., 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with

affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. White, 826 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. Id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as

to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-CV-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-CV-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

## B. **Statement of Material Facts**[2]

---

[2] The Local Rules of Court provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party]...as to which it is contended that there exists a genuine issue to be tried." M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. Id. Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Unless otherwise noted, the factual background herein is taken from Defendants' Rule 56.1 statement of material facts. (Doc. 27). Plaintiff did not file an appropriate response to Defendants' statement of facts in compliance with M.D. Pa. L.R. 56.1. Thus, the Court deems the facts set forth by Defendants to be undisputed. See M.D. Pa. LR 56. 1; Fed. R. Civ. P. 56(e)(2).

On February 16, 2022, Plaintiff filed an Inmate Request Form stating

the following:

> I want to appeal the Grievance on 1-23-22 when Officer Mayer
> assaulted me and sprayed me repeatedly, punching and choking
> me and he did not write no incident report. I still did not get my
> copy.

(Doc. 37-2 at 9).

On March 7, 2022, Plaintiff's request form was responded to with the

following:

> You cannot appeal a grievance that you have not received a
> response to. The original grievance is in the process of being
> investigated.

Id.

On April 29, 2022, Plaintiff drafted the instant complaint, where it was

received and filed with this Court on May 17, 2022. (Doc. 1).

## C. Discussion

Under the PLRA, a prisoner must pursue all available avenues for relief

through the prison's grievance system before bringing a federal civil rights

action. See 42 U.S.C. §1997e(a); Booth v. Churner, 532 U.S. 731, 741 n.6

(2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought

and offered through administrative avenues."). Section 1997(e) provides, in

relevant part "[n]o action shall be brought with respect to prison conditions

under section 1983 of the Revised Statutes of the United States, or any other

Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. §1997(e). The exhaustion requirement is mandatory. Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); Booth, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"). Moreover, while Plaintiff was released from prison after filing the above-captioned case (Doc. No. 10), he is still bound by the exhaustion requirement because he has raised claims concerning events that occurred prior to his release. See Ahmed v. Dragovich, 297 F.3d 201, 210 (3d Cir. 2002).

The United States Court of Appeals for the Third Circuit has further provided that there is no futility exception to §1997e's exhaustion requirement. Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000). Courts have typically required across-the-board administrative exhaustion by inmates who seek to pursue claims in federal court. Id. Additionally, courts have imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Courts have concluded that inmates who

fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. See e.g., Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000).

This broad rule favoring full exhaustion allows for a narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate.' Warman, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts.

Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005). Nor can an inmate avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him. Warman, 49 F. App'x at 368. Thus, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust. Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003); see also Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing.' ") (citations omitted).

The Supreme Court has considered what renders administrative remedies unavailable to an inmate such that a failure to exhaust can be excused. See Ross v. Blake, 136 S. Ct. 1850 (2016). The Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Id. at 1859. First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved

inmates." Id. Second, a procedure is not available when it is "so opaque that it becomes, practically speaking, incapable of use." Id. Finally, a procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misinterpretation, or intimidation. Id. at 1860.

The Third Circuit recently joined other circuits to hold "that administrative remedies are not 'available' under the PLRA where a prison official inhibits an inmate from resorting to them through serious threats of retaliation and bodily harm." Rinaldi v. United States, 904 F.3d 257, 267 (3d Cir. 2018). To defeat a failure-to-exhaust defense based on such threats, "an inmate must show (1) that the threat was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance and (2) that the threat actually did deter this particular inmate.' Id. at 269.

Finally, failure to exhaust is an affirmative defense that must be pled by the defendant. Jones v. Bock, 549 U.S. 199, 216 (2007). "In a motion for summary judgment, where the movants have the burden of proof at trial, 'they [have] the burden of supporting their motion for summary judgment with credible evidence... that would entitle [them] to a directed verdict if not controverted at trial'.' Foster v. Morris, 208 F. App'x 174, 179 (3d Cir. 2006)

(quoting In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (internal

quotations omitted)). If "the motion does not establish the absence of a

genuine factual issue, the district court should deny summary judgment even

if no opposing evidentiary matter is presented." Id. (quoting Nat'l State Bank

v. Fed. Reserve Bank of N.Y., 979 F.2d 1579, 1582 (3d Cir. 1992) (internal

quotations omitted)).

This court in the past has taken judicial notice of Dauphin County

Prison's grievance procedures. Funk v. DeRose, 2012 WL 6966712, at *8

(M.D. Pa. Nov. 28, 2012) report and recommendation adopted, 2013 WL

393868 (Jan. 31, 2013); see also Shakuur v. Costello, 230 Fed.Appx. 199,

201 (3d Cir. 2007)(taking judicial notice of Philadelphia Prison System's

grievance procedures). This court has explained the Dauphin County

grievance procedure as follows:

> (1) The submission of a grievance for review and determination
> by the Warden; (2) an appeal of any decision to the Chairman of
> the Dauphin County Prison Board of Inspectors; (3) an appeal of
> the Chairman's decision to the full Dauphin County Prison Board
> of Inspectors; and (4) an appeal from the Prison Board's decision
> to the Dauphin County Solicitor.

Sawyers v. Brown, 2014 WL 407337, *2, (M.D. Pa. Feb. 3, 2014).

Here, Defendants argue that Plaintiff's grievance record demonstrates

that he failed to properly exhaust his administrative remedies prior to filing

the instant action. Specifically, they argue that Plaintiff failed to fully complete

the process by filing the instant action on May 17, 2022, prior to receiving a response to his January 23, 2023, grievance. The Court disagrees.

An inmate does not fail to exhaust if administrative remedies are unavailable. Ross, 578 U.S. at 643. The question here is whether a prison's failure to respond to a grievance renders the remedy unavailable. In Small v. Camden County, an inmate submitted two grievances "in compliance with [the prison's] procedures," but "no decision" was rendered on either of them and prison rules required inmates to wait for a decision before filing an appeal. 728 F.3d 265, 273 (3d Cir. 2013). The Third Circuit reasoned that "[b]ecause [the prison's] procedures did not contemplate an appeal from a non-decision, when [the inmate] failed to receive even a response to the grievances ... much less a decision as to those grievances, the appeals process was unavailable to him." Id. In Robinson v. Superintendent, 831 F.3d 148, 153-54 (3d Cir. 2016), the Third Circuit similarly held that the exhaustion requirement is satisfied where prison officials fail to timely respond to an inmate's properly filed grievance. See also Martin v. Gearhart, 712 F. App'x 179, 183–84 (3d Cir. 2017) (explaining same).

Here, Plaintiff properly filed his grievance on January 23, 2022. On February 16, 2022, he inquired as to the status and his interest in filing an appeal. Almost a month later, on March 7, 2022, his request is responded to

with the instruction that he can not appeal until a response is received and that the grievance is in the process of being investigated. Missing, however, is any indication that Plaintiff's grievance was ever responded to, and that the response was timely.

In Shifflett v. Korszniak, 934 F.3d 356, 365 (3d Cir. 2019) the United States Court of Appeals for the Third Circuit held that "as soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable, and the prisoner has fully discharged the PLRA's exhaustion requirement." Thus, Defendants have failed to meet their burden of proof to demonstrate that Plaintiff received a timely response to his grievance and that he failed to exhaust administrative remedies by filing the instant action before filing an appeal of his grievance response. As such Defendants' motion for summary judgment based on Plaintiff's failure to exhaust will be denied.

## III. MERITS

### A. Standard of Review

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we

must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough. Twombly, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir. 2009) (per curiam).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual

elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief"." Id. at 211 (quoted case omitted).

## B. Allegations in Complaint

Plaintiff states that he was "on Q61 cell at Dauphin County Prison" and he "was put in the hold (sic) because Ms. Terri Ozog didn't mail [his] motion on 12-28-21." Id. He claims that he is "listed as bottom bed because of stitches in [his] left and right hand so one she know that [he] know she haven't mailed [his] important motion" and she "moved [him] to top bed" and he "refused to go as [he] was on Q61 cell." Id.

Plaintiff next complains that on January 23, 2022, Officer Mayer "with force aggressively grabb[ed] and squeez[ed] [his] arm to the point that his fingernails were in [Plaintiff's] skin." Id. He claims that Mayer assaulted him even though he "wasn't refusing and got found guilty 26 days and 10 days, so all together 3 days." Id. He alleges that his "tooth got pulled because of the altercation and [his] shoulder bone is rubbing on bone shaving down [his] bone in [his] shoulder." Id. He states that it "it was really hard to move and use it with [his] hand in cuff while off of this is happening as well as spraying

- 16 -

[Plaintiff] with pepper spray with COVID 19 in the hold, traumatizing [him] for the rest of his life." Id.

Plaintiff contends that Defendants, the Dauphin County Prison, William Kimmick and Jake Kothe "try to hide what's going on in the prison violating [his] constitutional rights." Id. He believes that Defendant Kothe "mak[es] the grievances go missing because he is handling the grievance" and that Kothe "isn't doing his job for [Plaintiff] because if the grievance have not been response to [he] can't' appeal the grievance." Id. Also he claims that he "can't copy grievance, so [he] has to rewrite [his] grievances," but he does have "[his] grievance that [he] mailed y'all on 2-1-22" in which he "wrote the administrative (sic) and nothing." Id. He believes that "if [he] was guilty for all of this [he] would have been charged and did more time in the hold (sic) than 36 days and nurses are tampering with the medical records like [he] had stitches and they don't know where it go my medical record with important things in it." Id.

For relief, Plaintiff seeks "70 million dollars, [his] layers fees payed (sic) and all the officers fired and [his] aggravated assault dismissed and five hundred thousand for every day [he] was in the hold (sic) dismiss without prejudice." Id.

- 17 -

## C. Discussion

### Defendant Dauphin County Prison

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. See Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990). It is well-settled that neither a state nor its agencies, are considered a "person" as that term is defined under § 1983 and, therefore, are not subject to a §1983 suit. Hafer v. Melo, 502 U.S. 21, 25–27 (1991). Similarly, neither a prison nor a department within a prison is a person subject to suit under §1983. Fischer v. Cahill, 474, F.2d 991, 992 (3d Cir. 1973). The Dauphin County Prison is not a person within the meaning of 42 U.S.C. §1983. Thus, it is entitled to dismissal with prejudice.

### Defendant Terri Ozog

Plaintiff alleges that "Ms. Terri Ozog didn't mail [his] motion on 12-28-21 to the County Clerk." (Doc. 1 at 4). Plaintiff's claim appears to raise an access to the courts claim. However, since Lewis v. Casey, 518 U.S. 343 (1996), courts have consistently recognized that access-to-courts claims by

prisoners require some proof of an actual, concrete injury in the form of direct prejudice to the plaintiff in the pursuit of some legal claim. See, e.g., Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997); Demeter v. Buskirk, No. 03-1005, 2003 WL 22139780 (E.D. Pa. Aug. 27, 2003); Castro v. Chesney, No. 97-4983, 1998 WL 150961 (E.D. Pa. March 31, 1998).

"[P]risoners may only proceed on access-to-courts claims in two types of cases, challenges (direct or collateral) to their sentences and conditions of confinement." Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008). As noted in Monroe:

> Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an "actual injury"—that they lost a chance to pursue a "nonfrivolous" or "arguable" underlying claim; and (2) that they have no other "remedy that may be awarded as recompense" for the lost claim other than in the present denial of access suit.

Id. (citing Christopher v. Harbury, 536 U.S. 403, 415 (2002)). Importantly, Plaintiff must come forward with evidence to show that the underlying arguable claim is "more than hope," and he must also describe the "lost remedy." See Harbury, 536 U.S. at 416-17. Plaintiff is thus required to allege plausible facts that he was actually injured by Defendants' alleged interference with his right to access the courts.

Here, Plaintiff does not indicate with any specificity that he missed filing deadlines and that those filings would have been meritorious. Instead, Plaintiff simply alleges that Defendant Ozog did not mail his motion to the County Clerk. Without more, Plaintiff has failed to allege how Ozog prevented Plaintiff's ability to access the courts. As such, any First Amendment Access to the Court claim against Ozog will be dismissed.

### Defendants Kimmick and Kothe

Plaintiff claims that Grievance Coordinator/Unit Manager Jake Kothe and CID Detective William Kimmick are "trying to hide what's going on in the prison, violating [his] constitutional rights." (Doc. 1). Specifically, he claims that these Defendants make "grievances go missing.' Id. Because questions of fact remain concerning Plaintiff's efforts to exhaust, Plaintiff has alleged enough against these Defendants, at this stage, to rise to the level of grievance interference, and Defendants' motion to dismiss will be denied.

### Defendant Correctional Officer Mayer

Plaintiff alleges that Defendant Mayer "assaulted [him] by aggressively grabbing [him] and putting his arm around [his] throat choking [him] and punching [him] repeatedly after choking [him], screaming" and "spray[ing] [him] all the time [h] was in hand cuff and fearing for [his] life." (Doc. 1 at 5).

- 20 -

A pretrial detainee's claim based upon the alleged use of excessive force arises under the Due Process Clause of the Fourteenth Amendment. See Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015) (reiterating that "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment" (citation and internal quotation marks omitted)). Because "pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically[,]'" see Kingsley, 576 U.S. at 400, "'a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable.'" See Jacobs v. Cumberland Cnty., 8 F.4th 187, 194 (3d Cir. 2021) (emphasis in original) (quoting Kingsley, 576 U.S. at 396-97).

In considering whether the use of force was objectively unreasonable, "'[a] court (judge or jury) cannot apply this standard mechanically.'" See id. (quoting Kingsley, 576 U.S. at 397). Instead, courts are to assess a variety of factors when determining whether an officer used "objectively unreasonable force[:]"

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

See id. at 194-95 (quoting Kingsley, 576 U.S. at 397). In addition, courts are to analyze the "circumstances from the perspective of a reasonable officer on the scene." See id. at 195 (citation and internal quotation marks omitted); Kingsley, 576 U.S. at 399 (recognizing that "[r]unning a prison is an inordinately difficult undertaking, ... and that safety and order at these institutions requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face" (citation and internal citation and quotation marks omitted)).

Defendants argue that Defendant Mayer is entitled to dismissal because Plaintiff conceded that when Defendant Ozog moved him to the top bed he "refuse to go as [he] was on Q61 cell," (Doc. 1 at 4), and Officer Mayer was, therefore justified in his use of force. (Doc. 9 at 14). They argue that the same applies for the use of O.C. spray. Id. Plaintiff alleges that while he refused to go to the top bed, he claims that while Defendant Mayer "assaulted [him, he] wasn't refusing" and that Defendant Mayer "aggravated assaulted [Plaintiff] with a weapon, while [he] was handcuffed." (Doc. 1 at 4).

Accepting Plaintiff's allegations as true, which the Court is required to do in connection with its resolution of a Rule 12(b)(6) motion to dismiss, the Court concludes that the complaint alleges facts sufficient to state a Fourteenth Amendment excessive use of force claim against Defendant

Mayer. Liberally construed, the complaint alleges that, while Plaintiff refused to move to a top bed, he did not resist Defendant's Mayer use of force, resulting in Plaintiff being sprayed with OC spray. As a result, the complaint plausibly alleges that the force used against Plaintiff was objectively unreasonable. See Jacobs, 8 F.4th at 194.

That being said, the Court acknowledges Defendant Mayer's argument that the that the force used against Plaintiff was not objectively unreasonable under the circumstances of this case. (Doc. 15 at 9 (arguing that force is allowed to be used when an inmate refuses to comply with an order of extraction from a cell)). Although there may be situations in which application of the Kingsley factors can occur based upon the pleadings alone, the Court concludes that, in this matter, a developed factual record is necessary to determine whether Defendant Mayer's use of force was objectively unreasonable under the circumstances. As a result, the Court is unable to conduct an appropriate Kingsley analysis at this time. Thus, the Court finds that the complaint plausibly states a Fourteenth Amendment excessive use of force claim against Defendant Mayer. As such, the Court will deny Defendants' motion to dismiss Plaintiff's excessive force claim.

## IV. CONCLUSION

For the reasons set forth above, the Court will deny Defendants' motion for summary judgment, based on Plaintiff's failure to exhaust administrative remedies prior to filing his federal action. The Court will grant Defendants' motion to dismiss with respect to Defendants, the Dauphin County Prison and Defendant Ozog. The motion will be denied as to Plaintiff's claims of grievance interference by Defendants Kothe and Kimmick and Plaintiff's excessive force claim against Defendant Mayer.

A separate Order shall issue.

**MALACHY E. MANNION**
**United States District Judge**

**DATE: September 27 2023**
22-0730-01