IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOE N. HARRELL,** | : | **CIVIL ACTION NO. 3:22-CV-730** |
| | : | |
| **Plaintiff** | : | **(Judge Neary)** |
| | : | |
| v. | : | |
| | : | |
| **MATTHEW MAYER**, *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## **MEMORANDUM**

This is a prisoner civil rights case filed pursuant to 42 U.S.C. § 1983. Plaintiff, Joe N. Harrell, alleges that his civil rights were violated when one defendant assaulted him and the other defendants interfered with his ability to file grievances about the assault. All parties have filed motions for summary judgment. Plaintiff's motion will be denied, defendant Kothe's motion will be granted, and defendant Mayer and Kimmick's motion will be granted in part and denied in part. The case will proceed solely with respect to plaintiff's excessive force claim against Mayer.

**I.**  **Factual Background & Procedural History**

Harrell filed this case on April 29, 2022, and the court received and docketed his complaint on May 17, 2022. (Doc. 1). The case was initially assigned to United States District Judge Malachy E. Mannion. Defendants moved to dismiss the complaint on August 22, 2022. (Doc. 14). On June 22, 2023, Judge Mannion converted the motion into a motion for summary judgment to the extent it asserted the affirmative defense of failure to exhaust administrative remedies. (Doc. 36). After receiving supplemental material on the exhaustion issue, Judge Mannion

issued a memorandum and order on September 29, 2023, which granted the motion in part and denied it in part, allowing the case to proceed solely as to: (1) Harrell's excessive force claim against defendant Mayer; and (2) his grievance interference claim against defendants Kothe and Kimmick. (Docs. 43-44). Defendants answered the complaint on October 19, 2023, and March 20, 2024. (Docs. 45, 59). All parties in the case subsequently moved for summary judgment. (Docs. 78, 81, 85). Briefing deadlines for these motions have expired, and the motions are ripe for review.

## II.   Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if the moving party shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A factual dispute is material if resolution of it "might affect the outcome of the suit under the governing law" and genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Mall Chevrolet, Inc. v. General Motors LLC, 99 F.4th 622, 631 (3d Cir. 2024) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. Tolan v. Cotton, 572 U.S. 650, 657 (2014) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)). The court's duty is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 242-43.

There are "two closely related methods for a movant to succeed at summary judgment." Mall Chevrolet, 99 F.4th at 630. "First, under the standard approach, the

2

moving party may produce material facts, established as genuinely undisputed, that entitle it to judgment as a matter of law." Id. (citing FED. R. CIV. P. 56(a)). "Second, under the Celotex approach, a moving party may instead demonstrate that the nonmoving party has not made 'a showing sufficient to establish the existence of an element essential to that party's case on which that party will bear the burden of proof at trial.'" Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

The nonmoving party can defeat a motion for summary judgment by producing evidence to establish a genuine issue of material fact. Anderson, 477 U.S. at 256. The nonmoving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. The party "must do more than simply show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. Moreover, if the nonmovant's version of disputed facts is "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

### III. Material Facts

Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving

3

party contends there is no genuine issue to be tried." M.D. Pa. L.R. 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. Id. In this case, plaintiff has failed to file a statement of material facts in support of his motion for summary judgment. Additionally, defendants have filed statements of material facts in support of their motions for summary judgment, (see Docs. 82, 86), but plaintiff has failed to respond. Accordingly, plaintiff's motion for summary judgment will be denied for failure to comply with Local Rule 56.1,[1, 2] and the factual assertions in defendants' statements will be deemed admitted for purposes of resolving the instant motions in accordance with Rule 56.1. See M.D. PA. 56.1. The court cites directly to defendants' statements of material facts for the below statement of facts.

At the time of the facts giving rise to this case, Harrell was a pretrial detainee in Dauphin County Prison ("DCP"). (Doc. 82 ¶ 1). He is now incarcerated in Dallas State Correctional Institution ("SCI-Dallas"). (Id. ¶ 2). Harrell's claims arise from an alleged assault by defendant Mayer on January 23, 2022. (Id. ¶¶ 6-8). The incident was captured on video footage from a body camera worn by Mayer. (Id. ¶ 41).

---

[1] Even if Harrell had complied with Local Rule 56.1, his motion would be denied. As discussed below, Harrell's claims against defendants Kimmick and Kothe fail because prison inmates do not have a constitutional right to a grievance process, and there are genuine issues of material fact on his excessive force claim against Mayer that preclude the entry of summary judgment for either party.

[2] Harrell's motion also appears to request issuance of a subpoena. (See Doc. 78). This request is deemed withdrawn for his failure to file a supporting brief. See M.D. PA. L.R. 7.5.

4

The video evidence depicts Harrell standing near a stairwell in the prison. (See video evidence at 2022-01-23, 13:02:08).[3] Harrell walks from where he is standing to a door, and Mayer follows him. (See id. at 13:02:11 – 13:02:19). At that point, the following verbal exchange occurs:

> Mayer: "What are you doing?"
> (Automated voice): "Yes?"
> Harrell (speak towards the door): "I need a toothbrush."
> Mayer: "Alright come on, lock in."
> Harrell: "We not gonna do that. That's what we not gonna do."
> Mayer: "Well if you're not listening that's what we're gonna do."
> Harrell: "What happened?"
> Mayer: "So if you're not gonna listen, that's what we're gonna do, come on."
> Harrell: "Come on man, you ain't gonna talk to me like I'm a fucking dog."
> Mayer: "I'm not talking to you like anything, lock in."
> Harrell: "Yes you are, my n*****."
> Mayer: "Lock in, come on, come on."

(See id. at 13:02:19 – 13:02:49). After this exchange, Mayer reaches out and appears to grab Harrell by the arm. (See id. at 13:02:49). Harrell repeatedly tells Mayer, "Don't touch me," to which Mayer responds, "Don't do that." (See id. at 13:02:49 – 13:02:54). Mayer then calls for backup from other officers. (See id. at 13:02:54). After Harrell repeatedly tells Mayer, "Don't touch me," Mayer appears to approach Harrell and initiate physical contact.[4] (See id. at 13:02:54 – 13:02-59). A physical altercation then begins, and it becomes impossible to see what is happening during the altercation for approximately 38 seconds. (See id. at 13:02:59 – 13:03:37).

---

[3] The video evidence has been produced to the court in electronic form as an exhibit to Mayer and Kimmick's motion for summary judgment.

[4] Defendants contend that "the video clearly shows Plaintiff squaring up against Mayer" as though he was preparing to fight him, (see Doc. 83 at 17), but the court disagrees that this fact is clear from the video. Viewing the video in the light most favorable to plaintiff as the non-moving party, it appears that Mayer approaches Harrell and solely initiates the physical contact.

5

After the altercation, Harrell is shown being wrestled to the ground. (See id. at 13:03:37). As Mayer and other officers roll Harrell onto his belly, Harrell yells that officers punched him, while the officers deny doing so. (See id. at 13:03:37 – 13:03:41). After Harrell is on his belly, Mayer calls for another officer to "give me spray," and to "spray him." (See id. at 13:03:46 – 13:03:51). Another officer then appears to pepper spray Harrell, which causes the officers to cough and Harrell to repeatedly shout, "I can't breathe." (See id. at 13:03:55 – 13:04:17). As this happens, the officers handcuff Harrell behind his back. (See id.) Video of the incident then concludes with Mayer walking out of the area towards the prison's medical unit. (See id. at 13:04:29 – 13:06:20). Medical records following the incident indicate that Harrell was sprayed with pepper spray and that he suffered a small laceration to his right lower lip and neck pain. (Doc. 82 ¶ 37).

Harrell names defendant Kimmick as a defendant based on his actions in investigating the incident as an employee of the Dauphin County District Attorney's office. (Id. ¶ 9). Harrell names Kothe as a defendant based on his actions in handling Harrell's grievances regarding the incident. (Id.) Although Judge Mannion previously construed Harrell's claims against Kimmick as arising from alleged interference with the grievance process, (see Doc. 43), Harrell has since admitted that Kimmick played no role in the grievance process and did not interfere with his grievances. (Doc. 82 ¶ 11).

## IV. Discussion

Harrell brings his constitutional claims under 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by

6

state officials. 42 U.S.C. § 1983. The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal law. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a Section 1983 claim, plaintiffs must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Defendants Mayer and Kimmick argue that they are entitled to summary judgment because Harrell's claims fail on their merits and because they are entitled to qualified immunity. (Doc. 83). Defendant Kothe argues that he is entitled to summary judgment because Harrell does not have a constitutional right to a grievance process, because Harrell fails to establish his personal involvement, and because he is entitled to qualified immunity. (Doc. 87).

At the outset, summary judgment will be granted in favor of defendants Kimmick and Kothe. The only remaining claim against them is for their alleged interference with the grievance process.[5] Prison inmates, however, do not have a

---

[5] Judge Mannion construed the complaint as asserting a claim against Kimmick for grievance interference. Defendants argue this claim fails because Kimmick is an employee of the district attorney's office rather than a prison employee and that any other claims the complaint asserts against him fail to state a claim. (Doc. 83 at 22-23). The court agrees with Judge Mannion's finding that the complaint asserts a claim against Kimmick only for grievance interference. (See Doc. 1 at 5 ("Dauphin County Prison is trying to hide what's going on in this prison with William H. Kimmick and Jake Kothe by making the grievances going missing because he is handling the grievance. . .")). Defendants are also correct that the complaint fails to state any other claims against Kimmick. There are simply no other allegations in the complaint against Kimmick.

7

constitutional right to a grievance process. See, e.g., Gerholt v. Wetzel, 858 F. App'x 32, 33-34 (3d Cir. 2021); Rivera v. Pa. Dep't of Corrs., 346 F. App'x 749, 751 (3d Cir. 2009); Jackson v. Gordon, 145 F. App'x 774, 777 (3d Cir. 2005). Thus, interference with Harrell's ability to file grievances would not violate his constitutional rights.

Turning to the excessive force claim against defendant Mayer, because Harrell was a pretrial detainee when the facts of this case occurred, his excessive force claim is governed by the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment. Wharton v. Danberg, 854 F.3d 234, 247 (3d Cir. 2017) (citing Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979)).

Pretrial detainees are entitled to at least as much protection from excessive force as prisoners who have been convicted of a crime. Bistrian v. Levi, 912 F.3d 79, 91 (3d Cir. 2018) (citing Kost v. Kozakiewicz, 1 F.3d 176, 188 n.10 (3d Cir. 1993)). Unlike prisoners who have been convicted of a crime, who may not be subjected to cruel and unusual punishment, pretrial detainees "cannot be punished at all under the Due Process Clause." Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005) (citing Bell, 441 U.S. at 520). Thus, pretrial detainees may not be subjected to "excessive force that amounts to punishment." Jacobs v. Cumberland Cnty., 8 F.4th 187, 194 (3d Cir. 2021) (quoting Graham v. Connor, 490 U.S. 386, 395 n.10 (1989)).

Unlike excessive force claims under the Eighth Amendment, which require plaintiffs to establish both an objective element and a subjective element to prove excessive force, excessive force claims under the Fourteenth Amendment are based exclusively on an objective-reasonableness standard. Id. (citing Kingsley v. Hendrickson, 578 U.S. 389, 396-400 (2015)). Thus, a pretrial detainee seeking to establish that the use of force was excessive "must show *only* that the force purposely or knowingly used against him was objectively unreasonable." Id. (emphasis in original) (citing Kingsley, 578 U.S. at 396-97).

There is no mechanical formula for determining when force is objectively unreasonable under the Fourteenth Amendment. Kingsley, 578 U.S. at 397 (citing County of Sacramento v. Lewis, 523 U.S. 833, 850 (1998)). Instead, courts and juries must look to the particular facts and circumstances of the case, including "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Id. (citing Graham, 490 U.S. at 396). These circumstances should be considered "from the perspective of a reasonable officer on the scene." Id. (quoting Graham, 490 U.S. at 396). A plaintiff can establish that the force used was excessive if he shows that the force was "not 'rationally related to a legitimate nonpunitive governmental purpose'" or that the force used was "excessive in relation to that purpose." Id. (quoting Bell, 441 U.S. at 561).

9

Here, there are genuine issues of material fact as to whether the force used by Mayer was excessive. Mayer argues that the force was reasonable and necessary to gain control over Harrell when he refused to comply with Mayer's orders, (Doc. 83 at 12), but because it is impossible to determine what is occurring during the relevant portion of the video evidence, (see video evidence at 13:02:59 – 13:03:37), there are genuine issues of material fact as to what force Mayer used and whether such force was reasonable. Additionally, viewing the video evidence in the light most favorable to Harrell, it appears that Mayer directed another officer to pepper spray Harrell after the officers had already obtained physical control over Harrell by wrestling him to the ground. Whether the use of pepper spray was reasonable in these circumstances is a genuine issue of material fact.

Mayer's qualified immunity argument fails for the same reason. A government official is entitled to qualified immunity if the official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Rivas-Villegas v. Cortesluna, 595 U.S. 1, 5 (2021) (quoting White v. Pauly, 580 U.S. 73, 78-79 (2017)). "Qualified immunity shields an officer from suit when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted." Taylor v. Riojas, 592 U.S. 7, 9 (2020) (quoting Brosseau v. Haugen, 543 U.S. 194, 198 (2004)). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." Kisela v. Hughes, 584 U.S. 100, 104 (2018) (quoting White, 580 U.S. at 79). Because qualified immunity is an affirmative defense, the defendant asserting the defense has the burden to establish that it

10

applies. Mack v. Yost, 63 F.4th 227 (3d Cir. 2023) (citing Halsey v. Pfeiffer, 750 F.3d 273, 288 (3d Cir. 2014)).

Defendant Mayer acknowledges that the constitutional right at issue in this case—the duty to be free from excessive force—was clearly established, but he argues that he is entitled to qualified immunity because the use of force was objectively reasonable in this case. (Doc. 83 at 25-26). This argument is unpersuasive. As noted above, it simply cannot be concluded at this stage what force Mayer used or whether such force was reasonable in the circumstances given the lack of clarity in the relevant video evidence. Mayer's motion for summary judgment will accordingly be denied because there are genuine issues of material fact as to whether plaintiff can establish his excessive force claim on its merits and whether Mayer is entitled to qualified immunity from the claim.

## IV. Conclusion

Plaintiff's motion for summary judgment is denied, defendant Kothe's motion for summary judgment is granted, defendant Mayer and Kimmick's motion for summary judgment is granted in part and denied in part, and the case will proceed solely with respect to the excessive force claim against Mayer. A status conference will be scheduled to discuss whether the parties wish to proceed with mediation or whether the case should be scheduled for trial. An appropriate order shall issue.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated:     July 16, 2025